**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CLASS ACTION: CASE NO. 1:14-CV-24728-CIV-SCOLA/OTAZO-REYEZ**

KENAI BATISTA, ANDY CHANCE, GERARDO
TORRES, ANGELA MATLIN, AND TUNG
NGUYEN, INDIVIDUALLY AND ON BEHALF
OF THOSE SIMILARLY SITUATED,

                    PLAINTIFFS,

VS.

NISSAN NORTH AMERICA, INC.

                 DEFENDANT.
_____/

**UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**
**AND MEMORANDUM OF LAW**

      Plaintiffs KENAI BATISTA, ANDY CHANCE, GERARDO TORRES, ANGELA
MATLIN, and TUNG NGUYEN ("Plaintiffs"), pursuant to Federal Rule of Civil Procedure
23(e), move this Court for an Order granting final approval of the Amended Settlement
Agreement ("Settlement"): (1) approving the Settlement as fair, adequate, and reasonable; (2)
awarding $5,000.00 as an incentive payment to each Plaintiff as agreed in the Settlement; and (3)
awarding Class Counsel $3,750,000.00 as reasonable attorneys' fees and expenses. In support of
this Unopposed Motion for Final Approval of Class Action Settlement and Memorandum of Law
("Motion"), Plaintiffs state:

**MEMORANDUM OF LAW**

**I.    Introduction.**

      Plaintiffs respectfully request final approval of the Settlement which provides a $37—
$99 million dollar benefit to the Class[1] and includes a 24-month/24,000 mile extended warranty
to owners and lessees of Class Vehicles. The Settlement is the result of protracted, good-faith

_____

[1] The Nissan CVT 24-month extended warranty's value to the Settlement Class ranges from $37
million to $99 million, with a point estimate of $65 million. (Declaration of Lee Bowron, ACAS,
MAAA, ¶ 6, "Analysis of Retail Price" report attached thereto as Exhibit "B" (providing a retail
price analysis of the Nissan CVT 24 month extended warranty)).

negotiations mediated by Rodney A. Max and is fully supported by the Plaintiffs and Class Counsel, who are well-informed about the strengths and weaknesses of this case.

II.     **Statement of the Facts and Procedural History.**

  A.     **The Litigation**

   Plaintiffs allege that 2013-2014 Nissan Pathfinders and 2013-2014 Infiniti JX35s/QX60s contain a defect in the continuously variable transmission ("CVT") which causes the vehicles to judder. Plaintiffs assert various breach of warranty, statutory, and common-law claims arising under state and federal law.

   On December 15, 2014, Plaintiff Kenai Batista, on behalf of herself and current and former owners and lessees of 2013-2014 Nissan Pathfinders, brought this suit against Nissan North America, Inc. ("NNA") (Dkt. # 1). On October 8, 2015, Batista amended her complaint to add Plaintiffs Andy Chance and Crystal Quebral and expanded the class to include 2014 Infiniti QX60s. On March 30, 2015, Plaintiffs Gerardo Torres and Angela Matlin, on behalf of themselves and current and former owners and lessees of 2013-2014 Nissan Pathfinders, brought a similar class action lawsuit against NNA in the Central District of California (herein referred to as the "*Torres*" case). On March 18, 2016, Tung Nguyen, on behalf of himself and all current and former owners of 2013 and later Nissan Pathfinders, brought a similar class action lawsuit against NNA in the Middle District of Tennessee (herein referred to as the "*Nguyen*" case).  On October 5, 2016, Plaintiffs in this case amended their complaint to add Gerardo Torres, Angela Matlin, Boyong Park, and Tung Nguyen, the representatives from the *Torres* and *Nguyen* cases, to effectuate a single, efficient nationwide class settlement.

   Since filing the initial Complaint, Plaintiffs engaged in a contentious discovery process which included extended meet and confer efforts, three motions to compel (Dkt. # 30, 77, 92), and briefings on NNA's objection to Magistrate-Judge Otaza-Reyez's ruling (Dkt. # 49), which was overruled by this Court. (Dkt. # 62). Over 75,000 pages of responsive documents were produced in this case—about half of those were directly from NNA, with the remainder produced by JATCO (NNA's third-party CVT supplier) and Nissan dealerships which sold and serviced the Class Vehicles. (*See* Declaration of F. Jerome Tapley, ¶¶ 35). Much of the production included technical and engineering documents, data from vehicle testing, incident reports of numerous consumer complaints with their Affected Vehicles, communications and presentations exchanged between Nissan and its component parts suppliers, electronic

communications regarding the CVT defect and its history of redesign and engineering countermeasures. (*Id.*) Obtaining those documents, i.e. persuading and compelling NNA to produce them, was an arduous and complex task which required thoughtfulness, diligence, organization, skill, persistence, time, skill, and teamwork. (*Id.*).

Since filing the Complaint, Plaintiffs engaged in a contentious discovery process which included three motions to compel and briefings on NNA's objection to Magistrate-Judge Otaza-Reyez's ruling (Dkt. # 49), which was overruled by this Court (Dkt. # 62). More than 35,000 pages of documents were produced by NNA, and another 40,000 pages by JATCO, NNA's sister company that manufactured the CVT. (*See* Declaration of F. Jerome Tapley, ¶¶ 47-50).

Moreover, for nine days, Plaintiffs deposed NNA's corporate representatives on topics which included the design, manufacture, and marketing of the CVT, warranty claims, and NNA's countermeasures to address the judder issue. (*Id.* at ¶¶ 42-43). Plaintiffs also deposed multiple Nissan dealership representatives about their experiences consumers who serviced juddering Class Vehicles. (*Id.* at ¶¶ 49-51).

Furthermore, Plaintiffs prepared and moved for class certification of a nationwide class and Florida sub-class of Class Vehicle owners on May 31, 2016. (*Id.* at¶¶ 58-59) (Dkt. #109-112). In support of that motion, Plaintiffs filed approximately 1,000 pages of documentary and testimonial evidence including evidence from Plaintiffs' experts, Steven P. Gaskin and Dr. Robert G. Parker. (*Id.*).

After agreeing to mediate with Rodney A. Max, the parties first convened for settlement discussions on February 11, 2016. (Dkt. # 95). While mediation efforts reached an impasse that day, the parties resumed mediation in June and July of 2016 and included counsel in the *Torres* and *Nguyen* cases. (Declaration of Rodney A. Max, ¶ 12). After reaching an agreement in principle in August 2016, Plaintiffs began a six-week process of drafting, revising, and negotiating the Settlement Agreement, a second amended complaint to add Gerardo Torres, Angela Matlin, and Tung Nguyen as additional class representatives, and Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement, (Dkt. # 141), which summarized the material terms of the Settlement Agreement.

This Court preliminarily approved the Settlement (Dkt. # 148, 151, 159). Having notified consumers of the Settlement per the Court's Second Amended Preliminary Approval Order of

Class Action Settlement (Declaration of Lana Lucchesi, ¶¶ 6-9), Plaintiffs now request final approval.

### III.  Terms of the Settlement.

The Settlement confers significant benefit to the Settlement Class members by offering and facilitating a free, permanent repair and extending coverage of their powertrain warranty.

#### A.  The Settlement Class

The Settlement Class consists of all current and former owners or lessees of 2013-2014 Nissan Pathfinders and 2013-2014 Infiniti JX35/QX60s equipped with the FK-*k2 CVT in the United States and its territories, including Puerto Rico. (Dkt. # 156, ¶¶ 4, 31). Excluded from the Settlement Class are: (1) NNA, any entity or division in which NNA has a controlling interest, its/their legal representatives, officers, directors, assigns and successors; (2) any judge to whom this case is assigned and the judge's clerks and any member of the judge's immediate family; and (3) fleet and government purchasers and lessees.  (*Id.*).

#### B.  Settlement Benefits

First, the Settlement benefits the Settlement Class by extending their powertrain warranty coverage, as to the transmission assembly, by twenty-four (24) months or twenty-four thousand (24,000) miles, whichever occurs first. (*Id.* at ¶¶ 37, 48).  This extended warranty transfers with each Class Vehicle until its expiration, providing time for a free repair of *all* affected Class Vehicles.

Second, the Settlement also facilitates repair of *all* juddering Class Vehicles through the extended warranty by notifying all Settlement Class members. The Settlement formally notifies all owners and lessees of Class Vehicles of the importance of obtaining a free software update designed to trigger a Diagnostic Trouble Code ("DTC")—e.g. illuminates the check engine light if a judder is detected. It further notifies owners that the update and any related repair for the judder are available at authorized Nissan dealerships for free under the extended warranty. (*Id.* at ¶ 50).

Third, to all qualifying former owners of Class Vehicles, the Settlement grants preferred reduced pricing on a new Nissan or Infiniti vehicle through Nissan's Vehicle Purchasing Program ("VPP") through March 15, 2018. (*Id.* at ¶¶ 51-52).

Fourth, the Settlement creates an expedited dispute resolution process through the Better Business Bureau ("BBB") Auto Line for any future warranty claims. (Dkt. # 156, ¶¶ 11, 81; Dkt.

# 156-1). This BBB process does not bind any Class Member unless NNA is required to repurchase their vehicle.  (*See* Dkt. # 156-1). If the BBB's resolution does not require NNA to repurchase the Class Member's vehicle, the Class Member may accept the BBB's decision, appeal it, or file a lawsuit. (*Id.*). On the other hand, the BBB's decision is binding on NNA. (*Id.*). The BBB Auto Line will assist consumers in obtaining remedies from NNA in a free, efficient, and effective way.

### C.      Attorneys' Fees and Expenses

Plaintiffs' respectfully requests $3,750,000.00 in attorneys' fees and costs.  NNA does not oppose that award. (Dkt. # 165, ¶ 90). The Parties did not negotiate attorneys' fees or expenses until they agreed on Class relief, (Max Decl., ¶ 17), and the Settlement Class's relief and benefits will not be reduced or affected. (*See* Dkt. # 156, ¶¶ 90-95). Additionally, the total unreimbursed expenses incurred by Plaintiffs' Counsel which were reasonable and necessarily for the prosecution of this case are $436,071.09. (Tapley Decl., at ¶ 15; Declaration of C. Richard Newsome, ¶ 8; Declaration of Ronald P. Weil, ¶ 10; Declaration of Jordan Lurie, ¶ 15; Declaration of Lawrence Deutsch, ¶ 13; Declaration of Gregory F. Coleman, ¶ 11).

### D.      Class Representative Incentive Payments

Per the Settlement, Plaintiffs respectfully request incentive payments to Class Representatives Kenai Batista, Andy Chance, Angela Matlin, Tung Nguyen, and Gerardo Torres of $5,000.00. (Dkt. # 156, ¶ 90). While the Settlement is not conditioned on an incentive payment to those Plaintiffs, they each devoted a lot of time to their cases, admirably performed their class representative responsibilities, and obtained benefits for the Class (Batista Decl., Dkt. # 141-6, ¶¶ 5-8; Chance Decl., Dkt. # 141-7, ¶¶ 5-8; Torres Decl., Dkt. # 141-10, ¶¶ 6-9; Matlin Decl., Dkt. # 141-8, ¶¶ 6-9; Nguyen Decl., Dkt. # 141-9, ¶¶ 4-7).

### E.      Release of Claims Excluding Personal Injury Claims.

Under the Settlement, each member of the Settlement Class will release claims, demands, rights, liabilities and causes of action of every nature and description, known or unknown, suspected or unsuspected, asserted or that might have been asserted by the Plaintiffs or any Settlement Class member against NNA based upon or related to "transmission judder" or transmission design, manufacturing or performance, including but not limited to all claims asserted in the Lawsuits. (Dkt. # 156, ¶ 28). Claims for personal injury, wrongful death, or property damage are not released. (*Id.* at ¶¶ 10, 28). The BBB Auto Line remains available to

resolve any future warranty claims. *See supra*, Sec. III.B, *Settlement Benefits*; (Dkt. # 156, ¶¶ 11, 81; Dkt. # 156-1).

      **F.**    **Nationwide Notice Has Been Accomplished.**

      Per this Court's order (Dkt. # 159), Kurtzman Carson Consultants, LLC ("KCC") notified Settlement Class members of the Settlement via direct mail using addresses obtained through NNA and public records utilizing vehicle identification numbers ("VIN") (*See* Dkt. # 159) (Lucchesi Decl., ¶¶ 3-11). The website for the Settlement, www.NissanCVTLitigation.com, provides the supplemental short and long form notices, the Amended Settlement Agreement, and corresponding Release. (Lucchesi Decl., ¶ 11). An Interactive Voice Response system was created and is active to inform consumers about the Settlement, record requests for the long-form notice, and connect Class Members with a live call center agent. (*Id.* at ¶ 10). The appropriate governmental officials under the Class Action Fairness Act have been notified of the Settlement. (*Id.* at ¶¶ 3-5).

**IV.**    **The Settlement Merits Approval by the Court.**

      "There is an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex." *Ass'n for Disabled Ams., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002) (citation omitted). "Settlements of complex cases contribute greatly to the efficient utilization of scarce judicial resources, and achieve the speedy resolution of justice, for a just result is often no more than an arbitrary point between competing notions of reasonableness." *Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1379 (S.D. Fla. 2007) (quoting *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 538 (S.D. Fla. 1988)).  "A class action settlement accordingly should be approved so long as it is fair, adequate and reasonable and is not the product of collusion between the parties." *Ass'n for Disabled Ams.*, 211 F.R.D. 457 at 466 (citations and quotation omitted).

      In determining whether the settlement is fair, adequate, and reasonable, courts in the Eleventh Circuit consider:

> (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved.

*Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984).   "In evaluating these considerations, the district court should not try the case on the merits." *Perez*, 501 F. Supp. 2d at 1380 (citations and quotations omitted).  Instead, "the district court may rely upon the judgment of experienced counsel for the parties," and "[a]bsent fraud, collusion, or the like, the district court should be hesitant to substitute its own judgment for that of counsel." *Nelson v. Mead Johnson & Johnson Co.*, 484 F. App'x 429, 434 (11th Cir. 2012).

Where, as here, "the consent decree previously has been preliminarily approved, the decree is 'presumptively reasonable,' and an objector must overcome a 'heavy burden' to prove the settlement unreasonable."[2] *Ass'n for Disabled Ams.*, 211 F.R.D. at 467 (citations and quotations omitted) (citations and quotations omitted).  "And a small number of objectors from a plaintiff class of many thousands is strong evidence of a settlement's fairness and reasonableness." *Id.* (citations and quotations omitted).

**A.    The Settlement Is The Product of Good-Faith, Arms-Length Negotiation.**

"There is a presumption of good faith in the negotiation process." *Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 692 (S.D. Fla. 2014).  "Where the parties have negotiated at arm's length, the Court should find that the settlement is not the product of collusion." *Id.* The presumption of good faith has not been rebutted.

The record establishes that "[t]he Settlement Agreement was the result of arm's-length negotiations, assisted by a well-known mediator for class actions, Rodney A. Max." *Lee v. Ocwen Loan Servicing, LLC*, 2015 U.S. Dist. LEXIS 121998, at *33 (S.D. Fla. Sep. 14, 2015); (Max. Decl., ¶¶ 1, 10-18). Mr. Max is a "highly respected mediator," "one of the top mediators in Florida," and "probably one of the top mediators in the country." *Id.*; *see also Fresco v. Auto Data Direct, Inc.*, 2007 U.S. Dist. LEXIS 37863, at *15 (S.D. Fla. May 11, 2007) ("Plaintiffs have submitted in support of their motion the affidavit of Rodney A. Max, an eminently qualified mediator appointed by this Court.").

Mr. Max declares the Settlement "is the product of lengthy and particularly hard-fought negotiations which took place on an ongoing basis between July 2015 and September 2016." (Max Decl., ¶ 12). The negotiations involved three in-person mediation sessions on February 11, 2016, June 30, 2016, and July 22, 2016 and included "extensive discussions between the parties

---

[2] Pursuant to the Second Amended Preliminary Approval Order Of Class Action Settlement (Dkt. # 159), Plaintiffs' Counsel will file responses to any Objections on or before June 7, 2017.

both before and during the mediation sessions." (*Id.*). Mr. Max "never witnessed or sensed any collusiveness between the parties," and "[t]o the contrary, at each point during these negotiations, the settlement process was conducted at arm's-length, and while professionally conducted, was quite adversarial." (*Id.* at ¶ 14). "The relief for class members was the focus of the vast majority of the settlement negotiations," and "[t]here were no discussions of attorneys' fees, costs, or incentive awards until the substantive terms of the settlement were negotiated and resolved." (*Id.* at ¶ 15).

> **B.     The *Bennett* Factors Support Final Approval of the Settlement**

> **1.     The Significant Obstacles to Success at Trial Support Final Approval.**

In assessing the first *Bennett* factor, "[t]he likelihood of success on the merits is weighed against the amount and form of relief contained in the settlement." *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1319 (S.D. Fla. 2005).   The Court is "not called upon to determine whether the settlement reached by the parties is the best possible deal, nor whether class members will receive as much from a settlement as they might have recovered from victory at trial." *Gevaerts v. TD Bank, N.A.*, 2015 U.S. Dist. LEXIS 150354, at *16 (S.D. Fla. Nov. 5, 2015) (citations and quotations omitted).   The Court is "not to decide the merits of the case or resolve unsettled legal questions." *Canupp v. Sheldon*, 2009 U.S. Dist. LEXIS 113488, at *28 (M.D. Fla. Nov. 23, 2009). "[A] trial court in approving class action settlements has neither the duty nor even the right to reach any ultimate conclusions on the issues of fact and law which underlay the merits of the dispute." *Id.*

Although Plaintiffs' claims are meritorious, Plaintiffs recognize significant obstacles to success exist.  Notably, in *Torres,* Judge Klausner of the United States District Court for the Central District of California denied class certification regarding the same CVT issue in the Class Vehicles. *Torres v. Nissan N. Am., Inc.*, 2015 U.S. Dist. LEXIS 120381, at *1 (C.D. Cal. Sep. 1, 2015).  In doing so, that court identified several individualized issues that precluded certification for the warranty and consumer protection claims. *Id.* NNA would undoubtedly cite to *Torres* as persuasive precedent, and argue that Plaintiffs' warranty and consumer protection claims should similarly not proceed as a class. While Plaintiffs respectfully disagree with *Torres* and can distinguish the claims and procedural posture in this case,  the meaningful risk it created cannot be ignored.

Additionally, whether Plaintiffs could certify a nationwide class of consumers under the MMWA is uncertain, although that question is certainly full of factual and legal complexities.  In denying class certification, another Court in this district found::

> In short, varied state laws would govern the MMWA claims of class members across the country, imposing different legal requirements and overshadowing the common factual bases of the claims. Moreover, some of these laws would require individualized proof inappropriate for class treatment, such as proof of actual reliance upon VPX's advertisements. In light of the differences among applicable laws and the potential need for individualized proof, the Court finds that individualized legal and factual issues predominate over the common aspects of the Proposed Classes' MMWA claims, rendering class certification inappropriate under Rule 23(b)(3). *See Alligood*, 2009 U.S. Dist. LEXIS 131371, at *13-16.

*Karhu v. Vital Pharms., Inc.*, No. 13-60768-CIV-COHN/SELTZER, 2014 U.S. Dist. LEXIS 26756, at *23 (S.D. Fla. Mar. 3, 2014).

Based on the uncertainty of nationwide relief for the MMWA Class and the risk created by the *Torres* ruling, Plaintiffs' likelihood of success on the merits is arguably uncertain while the benefits of the Settlement to consumers are unquestionably strong.

### 2. The Settlement is Within the Range of Possible Recovery that is Fair, Adequate, and Reasonable, Given the Circumstances of the Case.

Courts combine the first and second *Bennett* factors by determining "the possible range of recovery," and then determining "where in this range of possible recovery do fair, adequate and reasonable settlements lie." *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 541 (S.D. Fla. 1988). The Settlement's recovery falls within the range of reasonableness when compared with the range of possible recovery at trial and the risks of protracted litigation.

Provable damages are inherently limited.  The Class Vehicles were recently manufactured and covered by an initial powertrain warranty, making it unlikely that Class Members could prove any recoverable out-of-pocket expenses related to the judder issue.  The Settlement, however, benefits the Class Members by extending their warranties without submission of individual claim forms and all receive the software and hardware repairs developed for the Class Vehicles on an extended basis.  When compared with the real risk that the Class Members could receive no benefit if this case were successfully tried and given the limited nature of the provable damages, the Settlement provides a positive, substantial benefit to the Class Members.

Former owners might also be unable to obtain any recovery.  In another economic loss case involving an alleged vehicle defect, Judge Cohn ruled that a consumer could not state a FDUTPA claim because she sold the vehicle "to an unsuspecting purchaser before the defect in the Door Locks had manifested." *Licul v. Volkswagen Grp. of Am.*, No. 13-61686-CIV-COHN/SELTZER, 2013 U.S. Dist. LEXIS 171627, at *14 (S.D. Fla. Dec. 5, 2013).  As such, the Settlement confers a substantial benefit upon the former owners, particularly given the legal obstacles they would have faced in moving forward with litigation.

### 3.      The Complexity, Expense, and Likely Duration of Continued Litigation Support Approval of the Settlement.

The fourth *Bennett* factor "weighs in favor of settlement approval where the litigation, including the appellate process, involves numerous class members and significant time and expense."  *Morgan v. Pub. Storage*, No. 14-cv-21559, 2016 U.S. Dist. LEXIS 54937, at *18 (S.D. Fla. Mar. 9, 2016).  This factor is further supported where "[t]he claims and defenses are complex; litigating them has been difficult and time consuming," and "recovery by any means other than settlement would require additional years of litigation in this Court and the appellate courts."  *Torres v. Bank of Am. (In re Checking Account*, 830 F. Supp. 2d 1330, 1345 (S.D. Fla. 2011).  Plaintiffs have already incurred $436,071.09 in costs in prosecuting this action. (Tapley Decl., at ¶ 15; Newsome Decl., at ¶ 8; Weil Decl., at ¶ 10; Lurie Decl., at ¶ 15; Deutsch Decl., at ¶ 13; Coleman Decl., at ¶ 11).

This action involves complicated questions of fact and law.  The facts underlying Plaintiffs' claims are complicated engineering and design issues, resulting in the production and review of approximately 75,000 pages of highly technical engineering documents and blueprints. (*See* Declaration of F. Jerome Tapley, ¶¶ 35). Plaintiffs were preparing to take depositions of the engineers from the non-party CVT supplier, JATCO, when settlement negotiations began.  This third-party discovery would have likely opened the door to additional discovery, further adding to the cost, expense, and complexity.

The Parties were also preparing to begin expert discovery at the time of settlement. Given the complexity of the facts, expert discovery would have demanded immense resources, including resources to prepare each expert for deposition, defending and taking the expert depositions, and preparing them to testify at trial. *See Francisco v. Numismatic Guar. Corp.*, 21 Fla. L. Weekly Fed. D101 (U.S. S.D. Fla. Jan. 30, 2008) (holding that the settlement met the

fourth *Bennett* factor where "[t]he cost of experts, technical consultants at trial, and other trial expenses would have been substantial.").

Appellate practice must also be considered. Regardless of which side would potentially prevail, an appeal of any final ruling is almost certain.  This action involved many contentious legal issues, including but not limited to: whether Plaintiffs are required to, or could, prove that NNA knew of the defect prior to selling the Class Vehicles; whether Plaintiffs could certify a nationwide class of consumers under the MMWA; whether the "shudder/judder" issue constituted a material defect actionable under FDUTPA, or whether it qualifies as a breach of an express or implied warranty; and what measure Plaintiffs could use to prove damages.  These issues would have been hotly contested, and the existing precedent from the Eleventh Circuit and Florida's appellate courts have left gray area regarding these substantive questions of law as it relates to Plaintiffs' claims and evidence.

### 4. Class Members, Class Counsel, and the Class Representatives Support Approval.

"In determining whether a proposed settlement is fair, reasonable and adequate, the reaction of the class is an important factor." *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1324 (S.D. Fla. 2005). "[A] low percentage of objections points to the reasonableness of a proposed settlement and supports its approval." *Id.*  This factor also supports approval where the objections "lack . . . substance." *Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1382 (S.D. Fla. 2007). Here, the Settlement Class exceeds 289,267 individuals (Lucchesi Decl., at ¶ 8).  KCC "received 9 objections to the settlement," and only 94 individuals have opted out. (*Id.* at ¶ 13, Exs. D-E). Seven additional objections were filed with the Court.[3] As such, the percentage of objectors and opt-outs is low, reflecting just .04% of the Settlement Class.[4]

Courts also look to "the opinions of class counsel" and "the class representatives" under this factor. *Wilson v. EverBank*, No. 14-CIV-22264-BLOOM/VALLE, 2016 U.S. Dist. LEXIS 15751, at *21 (S.D. Fla. Feb. 3, 2016) (citing *Leverso v. Southtrust Bank*, 18 F.3d 1527, 1530 n.6

---

[3]  The additional objections filed with the Court are: Thompson, James W. (Dkt. # 160); Fairbanks, Rose M. (Dkt. # 164); Fritz, Robert (Dkt. # 172); Abraham, Amja (Dkt # 173); Abraham, Emmed (Dkt # 174); Peterson, Anitra (Dkt. # 175); and Cusack, Andrew (Dkt # 176).

[4]  The filed objections lack substantive factual or legal basis, with most of the objections simply seeking additional monetary compensation or a longer warranty extension.  *Perez*, 501 F. Supp. 2d at 1382 (rejecting the objections as lacking substance, and observing that most of the objectors either misunderstood the settlement, or simply "desired to have a better deal").

(11th Cir. 1994)); *Cotton*, 559 F.2d at 1330 (the Court may rely on the judgment of counsel and, "should be hesitant to substitute its own judgment for that of counsel."); *accord Perez*, 501 F. Supp. 2d at 1380. Class Counsel, who are highly experienced in class-action litigation and are well-informed about the strengths and weaknesses of the case, strongly endorse the Settlement because it confers "substantial benefits" upon the Settlement Class and is in the best interests of the Class Representatives and the Settlement Class. (Tapley Decl., at ¶ 2-10, 70; Newsome Decl., at ¶ 23; Weil Decl., at ¶ 12; Lurie Decl., at ¶ 20; Deutsch Decl., at ¶ 33; Coleman Decl., at ¶ 13) (*see also* Max Decl., at ¶ 16 ("In my opinion, the settlement negotiations in this case resulted in a resolution that is fair, reasonable and adequate for class members.")). The Class Representatives closely supervised this litigation and similarly endorse it. (Batista Decl., Dkt. # 141-6, ¶¶ 6-8; Chance Decl., Dkt. # 141-7, ¶¶ 6-8; Matlin Decl., Dkt. # 141-8, ¶¶ 7-9; Torres Decl., Dkt. # 141-10, ¶¶ 7-9; Nguyen Decl., Dkt. # 141-9, ¶¶ 5-7). The fourth *Bennett* factor, therefore, supports approval.

### 5. The Settlement Was Achieved After Substantial Discovery and Motion Practice.

"The last *Bennett* factor is the stage of the proceedings at which Settlement was achieved." *Oakes v. Blue Cross & Blue Shield of Fla., Inc.*, 2016 U.S. Dist. LEXIS 147252, at *5 (S.D. Fla. Oct. 21, 2016). "A court evaluates the stage of the proceedings at the time of settlement to ensure that the plaintiffs have access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of the settlement against further litigation." *Perez*, 501 F. Supp. 2d at 1383.

The Parties engaged in a contentious discovery process, involving multiple motions to compel; extensive document discovery, some of which required translation; nine days of deposition testimony from NNA; and multiple Nissan dealership depositions. Plaintiffs further prepared and moved for class certification with well-supported affidavits from experts Steven P. Gaskin and Robert G. Parker, Ph.D., and documents and testimonial evidence. Class Counsel became well-informed about the merits of the case through the extensive discovery and motion practice which took place in this litigation. Accordingly, Class Counsel were able to properly weigh the benefits of settlement against further litigation. The final *Bennett* factor supports approval of the Settlement.

**V.      The Court Should Approve An Award of $3.75M in Attorneys' Fees and Expenses.**

      **A.      Under Eleventh Circuit Law, Class Action Attorneys' Fee Awards are Calculated as a Percentage of the Recovery Obtained for the Class**.

      In the Eleventh Circuit, "'[a]ttorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class.'" *Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1242 (11th Cir. 2011) (quoting *Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 772-775 (11th Cir. 1991).   In *Camden*, the court rejected use of the lodestar method in common fund cases.  946 F.2d at 774 (noting the lodestar method applies to statutory fee-shifting awards); *see also In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1362 (S.D. Fla. 2011) (in common fund cases, "[t]he lodestar approach should not be imposed through the back door via a 'cross-check.'").

      A settlement with ascertainable benefits may be treated as a "common fund" from which a percentage fee may be awarded.  *See Poertner v. Gillette Co.*, 618 F. App'x 624, 628-29 (11th Cir. 2015) (per curiam) (finding value of nonmonetary relief and cy pres award to be part of the "settlement pie" from which percentage of fund for fee award was calculated).   A court should award fees "based on a percentage of the total benefits made available, regardless of the actual payout to the class." *Wilson v. EverBank*, No. 14-CIV-22264, 2016 WL 457011, at *13 (S.D. Fla. Feb. 3, 2016); *see also Carter v. Forjas Taurus S.A.*, No. 1:13-CV-24583-PAS, 2016 WL 3982489, at *14 (S.D. Fla. July 22, 2016) (including the value of an "enhanced warranty" in the total benefits provided to the class); *David v. Am. Suzuki Motor Corp*., No. 08-CV-22278, 2010 WL 1628362, at *2 (S.D. Fla. Apr. 15, 2010) (including extended warranty and credits available for the purchase of new vehicles or parts to be part of the settlement benefits).

      Application of the "common fund" approach remains appropriate where attorneys' fees are paid by the defendant separate from the common fund.  *See Carter*, 2016 WL 3982489, at *13; *David,* 2010 WL 1628362, n.14 (applying common fund principles to a negotiated fee agreement even though the fee award was "paid separately by [d]efendants and [was] not drawn from a 'common fund' in the traditional sense").

      "There is no hard and fast rule mandating a certain percentage of a common fund which may be awarded as a fee because the amount of any fee must be determined upon the facts of each case." *In re Checking Account Overdraft Litig.*, 2014 WL 12557836, at *10.  The Eleventh Circuit has recently reaffirmed that twenty-five percent of the settlement benefits is a "bench

mark" attorneys' fee award. *See Poertner,* 618 F. App'x at 628 (citing *Camden*, 946 F.2d at 775); *see also Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1210 (S.D. Fla. 2006) ("federal district courts across the country have, in the class action settlement context, routinely awarded class counsel fees in excess of the 25% 'benchmark,' even in so-called 'mega-fund' cases.").

"'But because the appropriate percentage to be awarded as a fee in any particular case will undoubtedly vary,'" courts may also "'consider the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir.1974) . . . as well as [o]ther pertinent factors,' including 'any non-monetary benefits conferred upon the class by the settlement [ ] and the economics involved in prosecuting a class action,' in determining the reasonableness of a fee award." *Id.* (quoting *Camden*, 946 F.2d at 775); *see also Faught*, 668 F.3d at 1242 ("this court has often stated that the majority of fees in these cases are reasonable where they fall between 20–25% of the claims.  Where the requested fee exceeds 25%, the court is instructed to apply the twelve *Johnson* factors.") (citation omitted).[5]

### B.   Under the Percentage Fee Approach in the Eleventh Circuit, $3.75M for Attorneys' Fees and Costs is a Conservative Award.

This Settlement provides Class Members with ascertainable benefits from which a percentage fee may be awarded.  *See Poertner,* 618 F. App'x at 628-29.  As provided in section III(B) above, the benefits include: (1) an extended New Vehicle Limited Warranty for twenty-four (24) months or twenty-four thousand (24,000) miles; (2) notice to all owners and lessees of the Class Vehicles to obtain a software update to detect a judder and provide a free repair; and (3) preferred reduced pricing on a new Nissan or Infiniti vehicle for qualifying former owners through March 15, 2018. (Dkt. # 156, ¶¶ 48-53; Dkt. # 156-1). Additionally, the Settlement creates an expedited dispute resolution process through the BBB Auto Line for any future warranty claims, and it preserves the right to file a lawsuit for those unsatisfied with the result. (Dkt. # 156-1).

---

[5] "The *Johnson* factors include: (1) the time and labor required; (2) the difficulty of the issues; (3) the skill required; (4) the preclusion of other employment by the attorney because he accepted the case; (5) the customary fee in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *Faught,* 668 F.3d 1233 at 1242–43.

Plaintiffs' requested $3.75M award represents between 3.8% and 10.1% of the $37 to $99 million dollar value of the extended warranty, which does not even account for the additional benefits conferred upon the Settlement Class. (*See* Declaration of Lee Bowron, ACAS, MAAA, ¶ 6, Ex. B). The requested award is far below the Eleventh Circuit's 25% benchmark for common fund class action settlements. *See Poertner,* 618 F. App'x at 628. Moreover, the requested award is comparable to attorneys' fees awarded in other product defect class actions. *See, e.g., David*, 2010 WL 1628362, at *8 (awarding 20% of the monetary value of the settlement); *Carter*, 2016 WL 3982489, at *14 (awarding 12.2 percent of the settlement's total potential value).[6]

### C.    The Requested Fee is Also Reasonable Given the *Johnson* Factors.

Because Plaintiffs' requested $3.75M award is far below the 25% benchmark, it is reasonable without reference to the *Johnson* factors. *See Faught*, 668 F.3d at 1233, 1242. Even so, the *Johnson* factors further support the reasonableness of such an award. *See Martin v. Glob. Mktg. Research Servs., Inc.*, No. 614CV1290ORL31KRS, 2016 WL 6996118, at *2 (M.D. Fla. Nov. 30, 2016) ("The most significant of the 12 *Johnson* factors include the time and skill required, the risk of prosecuting a contingent fee case, and the results obtained.").

### 1.    Time and Labor; Contingent Fee.

Substantial time and labor was required, and Class Counsel assumed great risk, to achieve the Settlement. Class Counsel spent 6,727.3 hours prosecuting this case on behalf of the Class on a purely contingent basis, and incurred $436,071.09 in expenses. (Tapley Decl., at ¶¶ 11-15; Newsome Decl., at ¶¶ 5-8; Weil Decl., at ¶¶ 7-10; Lurie Decl., at ¶¶ 14-18; Deutsch Decl., at ¶ 7-10, 13; Coleman Decl., at ¶¶ 6-7, 11. Class Counsel investigated the claims;

---

[6] Courts in the Southern District regularly approve attorney fee awards at or above the 25% benchmark. *See Waters*, 190 F.3d at 1291 (affirming award of 33 1/3 percent of settlement benefits); *Gevaerts v. TD Bank, N.A.*, No. 11:14-cv-20744-RLR, 2015 U.S. Dist. LEXIS 150354 (S.D. Fla. Nov. 5, 2015) (awarding counsel 30% of the settlement benefits); *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1358-59 (S.D. Fla. 2011) (awarding 30% of the recovery net of expenses as fees); *Pinto v. Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334 (S.D. Fla. 2007) (attorney fee award of 30% was reasonable); *In re: Terazosin Hydrochloride Antitrust Litigation*, 99-1317 (S.D. Fla. Apr 19, 2005) (awarding fees of 33 1/3 % of settlement benefits); *In re: Managed Care Litig. v. Aetna*, MDL No. 1334, 2003 WL 22850070 (S.D. Fla. Oct. 24, 2003) (awarding fees and costs of 35.5% of settlement benefits); *Gutter v. E.I. Dupont De Nemours & Co*., No. 95-2152 (S.D. Fla. May 30, 2003) (awarding fees of 33 1/3 % of settlement benefits).

prepared and filed complaints; conducted substantial fact and expert discovery (including filing several meritorious motions to compel discovery); attended numerous court hearings; participated in frequent conferences with co-counsel, experts, and defense counsel regarding various matters; prepared and moved for class certification; engaged in extensive settlement negotiations that led to the Settlement; and drafted papers and notices to support the Settlement. (Tapley Decl., at ¶¶ 12, 16-68; Newsome Decl., at ¶¶ 3-4; Weil Decl., at ¶¶ 5-6, 11; Lurie Decl., at ¶¶ 3-10; Deutsch Decl., at ¶¶ 14-32; Coleman Decl., at ¶¶ 8-9, 12). The significant time Class Counsel spent on the case provides a strong basis for granting counsel the maximum award permitted under the Parties' settlement agreement. *See Carter*, 2016 WL 3982489, at *14 ("Given the amount of time and effort spent on this matter, as well as the risks of a contingency fee arrangement, the Court finds the requested fee award to be reasonable.").

In addition, the $3.75 million attorneys' fee award is comparable to the lodestar value of Class Counsel's time,[7] and substantially less than the $5,478,860.00 attorneys' fee award that results from applying a conservative 1.56 risk multiplier. (Tapley Decl., at ¶¶ 11-12; Newsome Decl., at ¶ 5; Weil Decl., at ¶¶ 7-8; Lurie Decl., at ¶¶ 13-14; Deutsch Decl., at ¶ 7-10; Coleman Decl., at ¶¶ 6-7). Counsel who pursue class actions on a contingency basis are often awarded more than their lodestar to compensate them for the litigation risk. *See Poertner*, 618 F. App'x at 626-27 (affirming award to class counsel of 1.56 times their lodestar). The time, labor, and contingent fee arrangement strongly support the *Johnson* factors and approval of Class Counsel's requested fee award.

### 2. The Amount Involved and the Results Obtained.

This case concerns approximately 241,000 vehicles that Plaintiffs and Settlement Class members purchased or leased by spending substantial money. Plaintiffs and Settlement Class members that own/lease these vehicles rely upon the vehicles for regular and safe transportation. Class Counsel pursued this case after hearing from Plaintiffs and other Settlement Class members that their vehicles' transmissions juddered, and observing hundreds of similar complaints online.

While the parties have not precisely calculated the "amount involved," given (1) the number of vehicles at issue; (2) the substantial sums that Plaintiffs and the Class paid/leased for

---

[7] The $3.75 million attorneys' fee award is substantially less than the lodestar value when taking into account Class Counsel's $436,071.09 in out-of-pocket costs.

them; (3) the importance to Plaintiffs and the Class of having safe transportation; and (4) that one of the Settlement's benefits is valued between $37 - $99 million, (*see* Bowron Decl., ¶ 6, Ex. B), this case is fairly characterized as involving a substantial amount.

A testament to the strength of the result obtained is that, due to the recent manufacture of Class Vehicles and the terms of the powertrain coverage in the Vehicles' Limited Warranties, Class Members likely have not expended any out-of-pocket expenses because of the judder. Further attesting to the strength of the Settlement, KCC only "received 9 objections to the settlement," only 7 objections were filed with the Court,[8] and only 94 individuals have opted out. (Lucchesi Decl., ¶ 13, Exs. D-E). That this sizeable class has asserted so few objections supports the fee request. *See Pinto*, 513 F. Supp. 2d at 1343 ("A small number of objections indicates the support of the Class."); *Elkins v. Equitable Life Ins. of Iowa, No*. CIVA96-296-CIV-7-17B, 1998 WL 133741, at *28 (M.D.Fla. Jan.27, 1998) ("There have been only six objections received from a Class of approximately 109,000 policy owners, which is a *de minimus* number" relative to the size of the class).

The amount resolved and results obtained *Johnson* factors strongly support approval of Class Counsel's requested fee award.

> **3.     The Difficulty of the Issues; the Skill Required; and the Experience, Reputation, and Ability of the Attorneys.**

As detailed in Class Counsels' declarations, Class Counsel are nationally-recognized in complex litigation, including consumer product liability class actions, and put all of their skill and experience to work in the service of Plaintiffs and Class Members. (Tapley Decl., at ¶¶ 2-10, Ex. A; Newsome Decl., at ¶¶ 9-21; Weil Decl., at ¶¶ 2-5; Lurie Decl., at ¶¶ 11-13, Ex. 1; Deutsch Decl., at ¶¶ 2-6, Ex. A; Coleman Decl., at ¶¶ 2-4, Ex. A). Class Counsel's highly-informed, diligent, and efficient prosecution was necessary to address many difficult issues, including litigating three motions to compel to favorable resolution. (*See* Max Decl., ¶¶ 12, 14-16).

Class Counsel also analyzed technical engineering documents, data from vehicle testing, numerous consumer complaints, internal NNA reports, communications and presentations exchanged between NNA and its component part suppliers, and communications regarding the transmission defect and its history of redesign and engineering countermeasures.  To understand

---

[8] *See supra* note 3.

evidence, develop Plaintiffs' liability theory, and depose NNA's corporate representatives, Class Counsel heavily consulted with experts well-versed on engineering issues.

Resolving this case at mediation also demanded Class Counsel's skill and experience with class action litigation to maneuver past impediments to settlement while benefitting Class Members. (*See id.* at ¶¶ 12-16 (outlining mediation settlement negotiations)). It is also important to consider Class Counsel's work in light of the quality of their opposing counsel.[9] As the Court is aware, NNA is represented by experienced and skilled attorneys from large, national law firms with excellent reputations, and who demonstrated vigorous advocacy in its defense.

The *Johnson* factors—the difficulty of the issues; the skill required; and the experience, reputation, and ability of the attorneys—strongly support the requested fee.

### 4.    Awards in Similar Cases.

As discussed above in Section 5.B-C, the attorneys' fee award requested here is conservative compared to awards in similar cases.  *See, e.g.*, *Allapattah*, 454 F. Supp. 2d at 1210 (noting that courts "routinely award[  ] class counsel fees in excess of the 25 percent 'benchmark'"). And since this amount will be paid to Class Counsel by NNA, the attorneys' fee and expense award will not diminish the Settlement Class's benefits, unlike many other common fund cases.  The awards in similar cases strongly support this *Johnson* factor and the requested fee.[10]

## VI.    The Court Should Approve Class Representative Incentive Payments.

Plaintiffs respectfully request the Court to approve incentive payments of $5,000 to each class representative for their service to the Class, to be paid separately by NNA.  NNA does not

---

[9] *In re KeySpan Corp. Sec. Litig.*, No. CV 2001-5852 (ARR) (MDG), 2005 U.S. Dist. LEXIS 29068, at *35 (E.D.N.Y. Aug. 25, 2005) ("The quality of opposing counsel is also important in evaluating the quality of Class Counsel's work.").

[10] Not all *Johnson* factors are relevant to a Court's attorneys' fee award analysis in every case. For example, here, the factors relating to the preclusion of other employment by the attorney because he accepted the case; the customary fee in the community; time limitations imposed by the client or circumstances; the undesirability of the case; and the nature and length of the professional relationship with the client should not positively or negatively impact Class Counsels' attorneys' fee award.  *See, e.g., In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1336 (S.D. Fla. 2001) ("There is no evidence that these attorneys have any prior relationship with any of the plaintiffs. Therefore, this factor does not support any adjustment to the benchmark."); *see also In re Xcel Energy*, 364 F. Supp. 2d at 993 ("Plainly, not all of the individual *Johnson* factors will apply in every case, so the court has wide discretion as to which factors to apply and the relative weight to assign to each.").

object to an incentive award up to $5,000. Incentive awards "compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Allapattah Servs. Inc.*, 454 F. Supp. 2d at 1218. "[T]here is ample precedent for awarding incentive compensation to class representatives at the conclusion of a successful class action." *David*, 2010 WL 1628362, at *6 (approving incentive award of $5,000 and a new motorcycle). "Courts have consistently found service awards to be an efficient and productive way to encourage members of a class to become class representatives." *Gevaerts*, 2015 WL 6751061, at *9 (approving service awards of $10,000).

The factors for determining an incentive award include: (1) the actions the class representatives took to protect the interests of the class; (2) how much the class benefited from those actions; and (3) the time and effort the class representatives expended in pursuing the litigation. *Id.* at *9. Applying these factors, $5,000 for each Class Representative is fair and reasonable. *See In re Checking Account Overdraft Litig.*, 2014 WL 12557836, at *10 (awarding $5,000 for each plaintiff); *Diakos v. HSS Sys., LLC*, No. CV 14-61784-CIV, 2016 WL 3702698, at *7 (S.D. Fla. Feb. 5, 2016) (awarding $10,000 to the class representative); *Wilson*, 2016 WL 457011, at *15 (awarding $5,000 to each class representative); *Carter*, 2016 WL 3982489, at *15 (awarding the class representative $15,000).

Each Class Representative contributed to this litigation, and benefitted the Class, far beyond their individual financial interests. Each Class Representative contributed at least forty hours to advance the interests of the Class. They all contributed to pre-suit investigation by sharing their experiences and evidence with Class Counsel, and participated in calls and meetings with Class Counsel. (Batista Decl., Dkt. # 141-6, ¶¶ 6-8; Chance Decl., Dkt. # 141-7, ¶¶ 6-8; Torres Decl., Dkt. # 141-10, ¶¶ 7-9; Matlin Decl., Dkt. # 141-8, ¶¶ 7-9; Nguyen Decl., Dkt. # 141-9, ¶¶ 5-7). In addition, each Class Representative reviewed court documents filed on their behalf, including reviewing and providing comments for their complaints.[11] The Class Representatives worked with Class Counsel to preserve evidence, made required disclosures, answered discovery, and provided deposition testimony.[12] They also kept themselves informed regarding the litigation by participating in: calls with Class Counsel, settlement negotiations, and

---

[11] Batista Decl., Dkt. # 141-6, ¶¶ 6-8; Chance Decl., Dkt. # 141-7, ¶¶ 6-8; Torres Decl., Dkt. # 141-10, ¶¶ 7-9; Matlin Decl., Dkt. # 141-8, ¶¶ 7-9; Nguyen Decl., Dkt. # 141-9, ¶¶ 5-7.
[12] *Id.*

the terms of the settlement agreement.[13] Because of the substantial efforts by each Class Representative, Plaintiffs respectfully request the full incentive award of $5,000 for each Class Representative.

## VII. Plaintiffs Provided Due Process to the Class and Complied with Rule 23's Notice Requirements.

Notice to the Settlement Class of the proposed Settlement satisfied Rule 23's requirement of "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *see also Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173–75 (1974). The Notice also satisfied Rule 23(e)(1)'s requirement that notice of a settlement be "reasonable"—i.e., it must "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Wal-Mart Stores, Inc. v. Visa U.S.A.*, 396 F.3d 96, 114 (2d Cir. 2005); *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).  Due process is satisfied "so long as the court reasonably selected a means likely to apprize interested parties." *Juris v. Inamed Corp.*, No. 10-12665, 2012 WL 2681445, *19 (11th Cir. July 6, 2012).

The notice's substance and its method of dissemination satisfied these standards. Since the Court approved KCC's notice plan (Dkt. # 159) (Lucchesi Decl., ¶¶ 2-11), KCC mailed more than 289,267 postcard notices by first-class mail to individual Class Members and promptly re-mailed notices to updated addresses. (Lucchesi Decl., ¶¶ 7-9). KCC also established an Interactive Voice Response and website for easy access to information about the Settlement, related deadlines and downloadable notice-related documents and court filings. (*Id.* at ¶¶ 10-11). Mailing notices, creating an Interactive Voice Response system, and a settlement website is "the best notice . . . practicable under the circumstances," satisfying Rule 23 and due process.

## VIII. The Court Should Grant Final Approval.

For all the reasons cited above, the Court should grant final approval, award attorneys' fees and expenses in the amount of $3.75 million, and award incentive payments to all Class Representatives in the amount of $5,000.

---

[13] *Id.*

DATED: Mary 24, 2017                      Respectfully submitted,

Ronald P. Weil                            */s/ F. Jerome Tapley*
Rweil@weilquaranta.net                    F. Jerome Tapley
Mary Olszewska                            jtapley@corywatson.com
Molszewska@weilquaranta.net               Hirlye R. "Ryan" Lutz, III (admitted *pro hac*
**WEIL QUARANTA, P.A.**                   *vice*)
200 S. Biscayne Blvd., Suite 900          rlutz@corywatson.com
Miami, Florida 33131                      Adam W. Pittman (admitted *pro hac vice*)
T: (305) 372-5352 F: (305) 372-5355       apittman@corywatson.com
                                          **CORY WATSON, P.C.**
                                          2131 Magnolia Avenue
                                          Birmingham, Alabama 35205
                                          T: (205) 328-2200 F: (205) 324-7896

Richard C. Newsome                        Lawrence D. Deutsch
newsome@newsomelaw.com                    ldeutsch@bm.net
William C. Ourand                         Jeffrey Osterwise
ourand@newsomelaw.com                     josterwise@bm.net
**NEWSOME MELTON, LLP**                   **BERGER & MONTAGUE PC**
201 S. Orange Ave., Suite 1500            1622 Locust Street
Orlando, Florida 32801                    Philadelphia, PA 19103
T: (407) 648-5977 F: (407) 648-5282       T: (215) 875-3062 F: (215) 875-4674

Jordan L. Lurie
Jordan.Lurie@CapstoneLawyers.com
**CAPSTONE LAW APC**
1875 Century Park East, Ste. 1000
Los Angeles, CA 90067
T: (310) 712-8155 F: (310) 943-0396

***Attorneys for Plaintiffs***

## <u>CERTIFICATE OF SERVICE</u>

I HERBY CERTIFY that on May 24, 2017, I electronically filed the foregoing with the U.S. District Court Southern District of Florida, using the electronic case filing system of the court.  I hereby certify that I have served all counsel of record and/or pro se parties of record electronically or by another manner authorized by the Federal Rules of Civil Procedure 5(b)(2).

*/s/ F. Jerome Tapley*
F. Jerome Tapley
